**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**TAMARA JOSEPH,**
    *Plaintiff,*

v.

**STATE OF RHODE ISLAND**, *by and through its* **SECRETARY OF TREASURY, JAMES DIOSSA;**
**RHODE ISLAND STATE POLICE;**
**DARNELL S. WEAVER** individually and in his official capacity as Superintendent of the Rhode Island State Police, and
**MICHAEL KANE**, individually and in his official capacity as a state trooper employed by the State of Rhode Island
    *Defendants.*

Civil Action No: 1:24-cv-

## COMPLAINT AND JURY CLAIM

1. This is an action for damages sustained by a citizen of the United States and of the State of Rhode Island, against the State of Rhode Island; Rhode Island State Police; State Trooper Michael Kane #71 ("Defendant Kane"), who unlawfully detained, harassed, assaulted, berated, and publicly humiliated the Plaintiff, Ms. Tamara Joseph.

2. This is also an action against Colonel Darnell S. Weaver, as supervisory Officer responsible for the conduct of the Rhode Island State Troopers, for his failure to take corrective action with respect to police personnel, to assure proper training and supervision of the personnel, or to discourage lawless official conduct. The Plaintiff alleges violations of her civil rights under Rhode Island and Federal law as well as common law claims.

## JURISDICTION

3. This action is brought for damages pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and the corresponding articles of the Constitution of Rhode Island.

4. This is a civil action arising under the laws of the United States and therefore this honorable Court has original jurisdiction.

5. This is a civil action authorized to redress the deprivation of Ms. Joseph's rights secured under the United States Constitution, and therefore this Court has original jurisdiction.

6. This is a civil action authorized by Rhode Island Laws and the Rhode Island Constitution as well as civil actions under the United States laws and Constitution, and therefore this Court has supplemental jurisdiction.

7. The amount in controversy exceeds one hundred thousand dollars ($100,000.00) excluding interests and costs.

## VENUE

8. The incident involving Defendants use of excessive force occurred in the County of Washington, State of Rhode Island, and therefore, venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. §1391(b)(2).

## PARTIES

9. The Plaintiff, Tamara Joseph ("Ms. Joseph"), is a resident of the State of Rhode Island.

10. Defendant, State of Rhode Island is sued by and through its Treasurer, James Diossa.

11. Defendant, James Diossa, is the treasurer of the State of Rhode Island and is sued in his official capacity as treasurer and is a resident of the State of Rhode Island.

12. Defendant, Rhode Island State Police, is a law enforcement agency with statewide jurisdiction under the direct control of the State of Rhode Island.

13. Defendant Colonel Darnell S. Weaver is the Superintendent and Commissioner of the Department of Public Safety for the Rhode Island State Police, State of Rhode Island and is herein sued both individually and in his official capacity.

14. Defendant, Michael Kane, upon information and belief, was at all times relevant hereto, a resident of the State of Rhode Island and at all times relevant hereto, was employed by the Rhode Island State Police as a State Trooper.

## FACTUAL ALLEGATIONS

15. Ms. Tamara Joseph is a 63-year-old life-long resident of Rhode Island who has no criminal history whatsoever and no traffic citations in at least fifteen (15) years.

16. On or about Wednesday December 21, 2022, at approximately 9:50am, Ms. Tamara Joseph left her house and got in her car in her driveway in North Kingstown, Rhode Island, to go visit a friend who lives in East Greenwich, Rhode Island.

17. Ms. Tamara Joseph was traveling alone at this time and her vehicle, license, insurance, and registration were all valid, updated, and in compliance with Rhode Island General Laws.

18. After putting on her seatbelt and safely pulling out of her driveway, Ms. Joseph drove toward the nearest entrance ramp to the RI Route 4 northbound highway.

19. Upon entering the RI Route 4 northbound highway, Ms. Joseph found herself in the lane furthest to the right or the "slow lane" as she knows it.

20. Almost immediately after entering the RI Route 4 northbound highway, Ms. Joseph noticed a police vehicle pulled over on the breakdown lane on the right side of the highway behind another vehicle.

21. Ms. Joseph continued to drive in the "slow" lane at reduced rate of speed.

22. About four (4) seconds after driving by the police vehicle, Ms. Joseph noticed the same police vehicle in her rearview mirror, now driving behind her at a high rate of speed and with its emergency siren on.

23. Ms. Joseph was immediately shocked to see the same vehicle behind her so quickly after driving by it and thought to herself that the officer must be trying to get by her and so she began to pull over into the emergency lane to let him by.

24. As Ms. Joseph began to pull her vehicle over into the emergency lane, she noticed the vehicle was still following her and that is when she realized it was pulling *her* over.

### *Beginning of Traffic Stop*

25. Upon stopping her vehicle, Ms. Joseph noticed Defendant Kane aggressively exit the driver's seat of his police vehicle and approach Ms. Joseph's vehicle from the passenger side window.

26. Ms. Joseph was immediately alarmed by the speed, urgent and aggressive body language which Defendant Kane displayed in approaching her vehicle.

27. Once at her passenger window, Defendant Kane demanded to see Ms. Joseph's license and registration. Defendant Kane immediately raised his voice and maintained a furious demeanor.

28. Ms. Joseph, immediately afraid of the angry trooper, explained to Defendant Kane her identification was in her purse which was in the trunk of her vehicle.

29. Defendant Kane became even angrier and louder and asked whether Ms. Joseph knew why he pulled her over.

30. Ms. Joseph responded she did not know why he pulled her over.

31. At this point, Defendant Kane is physically leaning inside of Ms. Joseph's car through her passenger side window and, pointing a finger at her angrily, began to shout whether Ms. Joseph knew what the "move over" law was.

32. Before Ms. Joseph could begin to answer, Defendant Kane cut her off, with his face reddening and voice quivering with anger, began to **berate** Ms. Joseph about how she violated the "move over" law after seeing his vehicle and he takes it *"very personally."*

33. Defendant Kane repeated the phrase "very personally" about 5 or 6 more times.

34. Ms. Joseph was mortified at the anger expressed by Defendant Kane and it paralyzed her, afraid to do anything to further anger Defendant Kane.

35. It should be noted, this episode is taking place at about 955am on a Wednesday morning on the breakdown lane of Route 4 with dozens of cars driving by every minute.

### *Defendant Kane illegally extends traffic stop*

36. After shouting at Ms. Joseph about the "move over" law for several minutes, Defendant Kane pulled out his personal cellular phone and pushed it toward Ms. Joseph's face, almost hitting her with it, demanding that she look at photos of his vehicle.

37. Defendant Kane, continuing to shout in a hostile and threatening fashion, explained to Ms. Kane that he had been rear-ended by a drunk driver several weeks earlier and that is why it is important for everyone to obey the "move over" law.

38. Ms. Joseph did see the photos on Defendant Kane's personal phone, showing his damaged vehicle.

39. Ms. Joseph, still very afraid, responded to Defendant Kane that she was sorry about his accident, but it has nothing to do with her especially because she does not drink alcohol.

40. Defendant Kane, again, cutting Ms. Joseph off before she could finish speaking, demanded to know when Ms. Joseph's last traffic violation was.

41. Ms. Joseph responded that it must have been over fifteen (15) years ago because she believes in adhering to the law and makes her best effort to be a good driver.

42. Defendant Kane next demanded to know whether Ms. Joseph was "*under the influence*" of anything because he "*simply could not believe*" Ms. Joseph did not see him earlier.

43. Ms. Joseph, shocked at the accusation, responded that she was a completely sober person, and she did not consume any substance of any kind.

44. In fact, unbeknownst to Defendant Kane until this moment, Ms. Joseph has been completely sober for years and remains an active member of her local A.A. community and supports other people on their path to sobriety.

45. Defendant Kane was not persuaded by ***any*** of Ms. Joseph's answers, no matter how honest, respectful, or polite as they were.

46. At this point, Ms. Joseph began to worry even more that Defendant Kane was not satisfied with any answer and would stop at nothing to **personally punish** her for failing to move her on the highway as revenge for the other driver who had collided with Defendant Kane's vehicle weeks prior.

### *Defendant Kane orders Ms. Joseph out of the car*

47. After explaining her sobriety to Defendant Kane, he remained unsatisfied, and Defendant Kane then ordered Ms. Joseph out of the vehicle.

48. Ms. Joseph asked why.

49. Defendant Kane shouted back, as if to discourage Ms. Joseph's questions, that he simply could not believe that Ms. Joseph did not see him on the side of the highway.

50. At no point did Defendant Kane state that he smelled alcohol, that Ms. Joseph had bloodshot eyes or slurred speech, or that he witnessed Ms. Joseph swerve in between lanes or any other indicia of being under the influence. His only problem was her alleged failure to move over fast enough.

51. Ms. Joseph, worried that Defendant's Kane unhinged anger would get even worse if she disobeyed, slowly exited her vehicle and hoped for the best.

52. Upon her exiting her vehicle, Defendant Kane ordered Ms. Joseph to march to the front of her vehicle and asked if she had any "physical limitations" that would preclude her from moving and completing field sobriety tests.

53. Ms. Joseph said she did, that she was 63 years old, and both of her hips were artificial due to many surgeries throughout her life and they often affect or impede physical movement.

54. Defendant Kane asked if Ms. Joseph had been in an accident.

55. Ms. Joseph responded her condition was not because of an accident but because she was born with severe "hip dysplasia", and she had no strength in her hips.

56. Defendant Kane then responded, in a loud and aggressive voice, *ordering* Ms. Joseph to "do it anyway," referring to completing the field sobriety tests.

### *Defendant Kane orders Ms. Joseph conduct field sobriety tests despite having no reasonable suspicion*

57. For the first test, Defendant Kane ordered Ms. Joseph to stand on one leg *and* to lift the other leg straight out.

58. Ms. Joseph attempted to do this and almost immediately fell over.

59. It should be noted, again, this is taking place in public, on RI Route 4 at about 10am, while dozens of cars drive by every minute.

60. Defendant Kane, in seeing Ms. Joseph lose her balance, grabbed her by the arm forcefully and told her to "forget it."

61. Not yet satisfied with the punishment and humiliation he is putting Ms. Joseph through, Defendant Kane then ordered Ms. Joseph to walk a straight line with one foot directly in front of the other foot.

62. Due to her condition, this test was also difficult for Ms. Joseph and she almost fell over immediately while attempting this second sobriety test too.

63. Still, not satisfied at the public humiliation he has put Ms. Joseph through, Defendant Kane orders Ms. Joseph to the back of his police vehicle and demands she take a breathalyzer.

64. At this point, Ms. Joseph is worried about what Defendant Kane might do next, so she gathers the courage to ask in a calm and respectful voice *"Why are you doing this?"*

65. Defendant Kane shouted back at Ms. Joseph, as if she was prohibited from questioning his authority.

66. Defendant Kane then pulled out the breathalyzer apparatus out of his vehicle and demanded Ms. Joseph blow into the tube, which she did.

67. Defendant Kane shouted that she blew too hard and made her do it again.

68. Ms. Joseph could not see the results on the breathalyzer but was confident they would be 0% because she had not drunk alcohol in years.

69. Ms. Joseph observed Defendant Kane's expression as he read the breathlyzer and he looked up at her, seemingly disappointed, and said "Well, ***something*** has to be wrong with you if you didn't see me."

### *Defendant Kane decides to AGAIN extend traffic stop despite Ms. Joseph passing multiple sobriety tests*

70. Defendant Kane next pulled out a pen and instructed Ms. Joseph to follow it with her eyes.

71. Defendant Kane held the pen in such a position that staring at the pen would require Ms. Joseph to stare directly into the sun.

72. When Ms. Joseph explained this to Defendant Kane, he responded "do the best you can."

73. Defendant Kane, still having produced no evidence of any wrongdoing by Ms. Joseph was visibly angered and continued to make accusations about Ms. Joseph.

74. Defendant Kane asked if Ms. Joseph was taking any medication because there was something "weird" about her eyes.

75. Ms. Joseph responded that she does take medication for her blood pressure.

76. Defendant Kane asked whether it "affects her brain," and Ms. Joseph responded no.

77. At this point, finally, Defendant Kane told Ms. Joseph she could get back inside her vehicle.

### *Conclusion of Traffic Stop*

78. Ms. Joseph did get back into her car and tried to regulate her breathing, thinking to herself that the last 30 minutes had felt like 30 years.

79. Before she could catch her breath, Defendant Kane was back by her driver's side window, giving her a ticket for $99.25 and sarcastically reviewed what the "move over" law was.

80. At this point, Ms. Joseph asked Defendant Kane what his name was and he responded, "Trooper Kane."

81. Before putting her seatbelt and driving away, Ms. Joseph tried to reflect on what had just happened.

82. She could not recall when, but she remembered Trooper Kane at one point saying to her *"I'm not saying you're a bad person. I mean, you could be, I don't know. We all judge each other. I'm sure you judge police"*

83. Defendant Kane did not have his entire uniform on and looked very sloppy and disheveled.

84. After reading her citation, Ms. Joseph identified Defendant Kane as RI State Trooper Michael Kane, Officer ID #71.

85. At no point did any other law enforcement personnel arrive on scene.

***CONTINUED ONTO NEXT PAGE***

## COUNT 1

## CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. §1983

86. Plaintiff hereby incorporates Paragraphs one (1) through eighty-five (85) herein as though set forth in full.

87. That on or about December 21, 2022, Defendant Kane, while acting under color of law, assaulted Plaintiff when he put her in reasonable fear that he would commit a battery, due to his extremely angry, loud, vindictive, and aggressive conduct throughout the entire illegally extended traffic stop.

88. That on or about December 21, 2022, Defendant Kane, while acting under color of law, shoved his personal cellular phone in Ms. Joseph's face, using his professional capacity as a state trooper to seek personal validation and vengeance for being hit by another driver.

89. That on or about December 21, 2022, Defendant Kane, while acting under color of law and ordered Ms. Joseph out her car despite having no reasonable suspicion of criminal activity.

90. That on or about December 21, 2022, Defendant Kane, while acting under color of law, commit battery upon the Plaintiff when he forcefully grabbed her arm while she attempted to conduct the field sobriety test Defendant Kane illegally subjected her to.

91. This use of excessive force deprived the Plaintiff of the Constitutional right to bodily security and liberty under the Fourteenth Amendment of the United States Constitution and was an unreasonable physical seizure of Plaintiff under the Fourth Amendment of the United States Constitution.

92. As a result of the unwarranted use of excessive force, Plaintiff was deprived of her constitutional rights and has lived in fear of all law enforcement personnel, especially Rhode Island State Police ever since this incident.

## COUNT 2

### STATE OF RHODE ISLAND'S FAILURE TO TRAIN AND SUPERVISE

93. Plaintiff hereby incorporates Paragraphs one (1) through ninety-two (92) herein as though set forth in full.

94. Defendant, State of Rhode Island has grossly failed to train its state troopers in the fundamental law of arrest, seizure, and prosecution in that members of its state police engaged in a practice of using excessive force in bringing unwarranted charges without due consideration for the protection of individual civil liberties.

95. The foregoing acts, omissions, systemic failures, customs and policies of the State of Rhode Island have caused Defendant Michael Kane to believe that determination of the right to arrest, seize, and the amount of allowable legal force was within his discretion.

96. As a direct and proximate cause of the aforesaid acts, omissions, policies and customs of the State of Rhode Island, Defendant Michael Kane improperly detained Ms. Joseph and used excessive force to subject her to field sobriety tests without reasonable suspicion.

## COUNT 3

### SUPERINTENDENT DARNELL S. WEAVER'S FAILURE TO TRAIN AND SUPERVISE

97. Plaintiff hereby incorporates Paragraphs one (1) through ninety six (96) herein as though set forth in full.

98. Defendant Darnell S. Weaver, as superintendent of the Department of Public Safety, knew, or in the exercise of due diligence, should have known that the conduct of Defendant Kane was likely to occur.

99. Defendant Weaver failed to take any preventative or remedial measures to guard against the conduct of Defendant Kane, as fully set forth and described herein. Had Defendant Weaver taken such measures, Plaintiff would not have suffered the deprivation of her rights more fully set forth herein. The failure of Defendant Weaver amounted to deliberate indifference, or deliberate misconduct, which directly caused the deprivations suffered by Ms. Joseph. Defendant Weaver failed to train, supervise, and discipline Defendant Kane and said failure caused Plaintiff's damages.

100. As a direct and proximate result of the above described unlawful of Colonel Weaver, Plaintiff was deprived of her right to be secure in her person, to equal protection of the laws and to Due Process of Law, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983 and 42 U.S.C. § 1986.

## COUNT 4

## ASSUALT AND BATTERY

101. Paragraphs one (1) through one hundred (100) are herein alleged as though set forth in full.

102. Defendant Kane caused unconsented and offensive contract upon the body of the Plaintiff by forcefully grabbing her arm during her attempt to comply with his illegal demands that she conduct field sobriety tests.

103. That throughout the entirety of the illegal traffic stop, Defendant Kane did at all times, through his visible anger and escalating demands, did cause Ms. Joseph to believe that she would be subject to battery by Defendant Kane if she did not comply with his illegal demands.

104. That as a direct and proximate cause of Defendant Kane's assault and battery upon the body of Ms. Joseph, she has suffered serious mental anguish and emotional distress.

## COUNT 5

## FALSE IMPRISONMENT

105. Paragraphs 1 through 104 are herein alleged as though set forth in full.

106. Defendant Kane intended to have Plaintiff confined and falsely imprisoned by conducting a traffic stop and, making a conscious and knowing decision to illegally extending the stop well beyond any reasonable suspicion of any crime or wrongdoing in order to satisfy his own personal grievances with another driver who crashed into him weeks prior.

107. Ms. Joseph was conscious and aware that she was detained and was not free to leave as a result of Defendant Kane and the authority he exerted over her during the duration of her illegally extended traffic stop.

108. Ms. Joseph did not consent to any of her confinement or detention.

109. The detention/confinement outlined herein was not otherwise privileged.

110. Ms. Joseph was detained without any justification by Defendant Kane of the Rhode Island State Police, who was at all times acting under color of law.

111. That as a direct and proximate result of Defendant Kane illegally detaining, Ms. Joseph has suffered serious mental anguish and distress.

## COUNT 6

## INTENTIONAL INFLCTION OF EMOTIONAL DISTRESS

112. Plaintiff reasserts paragraphs 1 through 111 herein as though set forth in full.

113. Defendant Kane's actions in illegally detaining Ms. Joseph were done intentionally.

114. Defendant's Kane conduct was extreme and outrageous.

115. That as a direct and proximate result of Defendant Kane's conduct, Plaintiff has suffered extreme emotional distress.

116. Indeed, Ms. Joseph, after not visiting professional counseling for years, has sought counseling after this incident due to the severe symptoms and flashbacks she has experienced since this incident and continues to experience as of the filing of this complaint.

**WHEREFORE**, Plaintiff, Tamara Joseph, respectfully requests this Honorable Court to enter judgment jointly and severally against the Defendants, State of Rhode Island, by and through its Treasurer James Diossa, Rhode Island State Police, Colonel Darnell S. Weaver in his individual and official capacity and Trooper Michael Kane in his individual and professional capacity:

a. Compensatory Damages in the amount of $500,000

b. Punitive Damages in the amount of $1,000,000

c. Attorneys fees pursuant to 42 U.S.C. § 1988

d. Such other and further relief as this Court may deem just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
Plaintiff, Tamara Joseph
By and through Counsel,

*/s/ Jose F. Batista, Esq.*
_____
Jose F. Batista, Esq. (#9449)
The Law Office of Jose F. Batista, LLC
225 Dyer Street, *4th Floor*
Providence, RI 02903
Dated: January 23, 2024    Tel: 401-415-0151
Email: j.f.batista1@gmail.com

14